SWANN, Judge
(dissenting).
The Final Decree of the Chancellor who heard the evidence and observed the witnesses was, partially, as follows:
* * * * * *
*56 “1. That FABER, COE & GREGG OF FLORIDA, INC., the Plaintiff in this cause, purchased by bulk sale all the assets of Montsalvatge & Co. of Miami, Inc., represented by Bill of Sale (Plaintiff’s Exhibit 2) for the total amoimt of $77,241.11. It was stipulated by counsel and is set forth in the Bill of Sale that said goods and chattels sold were free from all encumbrances and that the sellers will warrant and defend the sale of said property, goods and chattels.
“2. That the Plaintiff stipulates and admits, as reflected in Defendant’s Joint Exhibit 1, that the following taxes were due and owing, on the goods and chattels purchased by it:
City of Miami personal property tax $ 846.35
City of Miami personal property tax 3,485.25
State of Florida intangible tax 134.43
Dade County personal property ■ tax 4,180.00
“3. That the City of Miami and Dade County did notify the Plaintiff, pursuant to the bulk sales advertised notice, that taxes were due and owing to the City of Miami and to Dade County in the amounts specified above.
“4. That Joseph F. Ullrich, Vice President and General Manager of the plaintiff corporation, testified that a substantial portion of the fixtures purchased from Montsalvatge & Co. of Miami, Inc. are still in the possession of the Plaintiff, and predicated on Plaintiff’s composite Exhibit 1, the fixtures in the Plaintiff’s possession are carried on their books at a total value of $2,889.86. ' '
“5. Mr. Ullrich testified that the Plaintiff initially owned no goods or chattels, and the goods and chattels purchased from Montsalvatge & Co. of Miami, Inc. were sufficient to commence a going business in the sale and merchandising of tobacco and tobacco products and related items, and that the Plaintiff did, approximately every 30 days, replenish any stock sold consisting of cigars, cigarettes, pipes and other merchandising items handled by it, and that said items in stock and replenished by the Plaintiff were co-mingled, and that the present value of this stock was approximately $20,000.00.
“6. That the Plaintiff in its complaint in Paragraph 4 alleged:
“ ‘That in its regular course of business, plaintiff has sold all of the merchandise inventory, subject matter of the aforesaid bulk sales transaction, and there remains only in the possession of the plaintiff out of said bulk sale Vehicles (rolling stock) and certain furniture and fixtures.’
and that the Vice President and General Manager, Joseph F. Ullrich, testified at the taking of his deposition by the Defendants on February 21, 1963 :
“ ‘Q. What equipment and fixtures, including any trucks or automobiles which is the subject matter of this bulk sale and purchase, remain in the possession of Feber, (sic) Coe & Gregg at the present time?
“ ‘A. Besides merchandise it was desks — ■
“ ‘Q. I am not asking what was the subject matter of the purchase. I am asking what remains in the hands of Faber, Coe & Gregg of Florida, Inc. out of that purchase as of now.
“ ‘A. The desks, office equipment, a few hand trucks, the automobiles.
*57 “ ‘Q. What automobiles?
“ 'A. Trucks and some salesmen’s cars.
“ ‘Q. Can you tell me a little more specifically? You said trucks. How many trucks?
“ ‘A. Without the records I couldn’t tell you.
“ ‘Q. Do you mean these were part of the subject matter of the hulk purchase from Montsalvatge?
“‘A. Yes.
“ ‘Q. There is more than one truck and more than one automobile ?
“‘A. Yes.’
“The Plaintiff’s witness, Mr. Edgar M. Willard, attempted to testify as to the sale of all the vehicles purchased by Faber, Coe & Gregg of Florida from Montsalvatge & Co. of Miami, Inc. in approximately March, 1961, but the attorneys for the Defendants objected to this testimony on the grounds of surprise, as said proof is contrary to the allegations in their pleadings and the depositions heretofore cited, and that ■said testimony is irrelevant and immaterial, and the Court found that said objection was well taken and sustained same. The attorneys for the Plaintiff then moved to amend their complaint, and the Court permitted said amendment, subject to the condition that the sums deposited in the Registry of the Court in this cause will stand in place of the vehicles allegedly sold, and that said sums will stand for the value of said vehicles. The attorney for the Plaintiff then elected to so amend.
“7. That the vehicles sold had a wholesale value of $9,700.00, and that Plaintiff’s witness testified that the actual retail value of said vehicles was 20 percent greater than this amount, or a value of approximately $11,640.00.
“It is thereupon
“ORDERED, ADJUDGED AND DECREED:
“1. That the injunction heretofore entered by this Court is hereby dissolved.
“2. That the City of Miami, a municipal corporation, and Dade County, a political sub-division of the State of Florida, have a valid lien against the fixtures purchased by the Plaintiff from Montsalvatge & Co. of Miami, Inc. and in the possession of the Plaintiff at the time of filing the complaint in this cause.
“3. That the Defendants, City of Miami, a municipal corporation, and Dade County, a political sub-division of the State of Florida, have a valid lien against the merchandise, consisting of cigars, cigarettes, tobacco and other stock in trade of the Plaintiff as said stock has been co-mingled with that stock purchased from Montsal-vatge & Co. of Miami, Inc.
“4. That the liens for taxes of the City of Miami and Dade County are valid and enforceable against the tangible and personal property of Faber, Coe & Gregg of Florida, and that the amounts of money deposited in the Registry of this Court by the Plaintiff shall be applied to the payment of said taxes and the satisfaction of such liens. The Clerk of the Circuit Court shall, and he is hereby directed to, release said sums to the City of Miami • and Dade County, Florida, in the amount of the taxes respectively due them.
“5. That the costs of this cause are hereby assessed against the Plaintiff.”
******
The appellant by its sworn complaint of March 27, 1962 alleged that the vehicles (rolling stock) were still in its possession. On February 21, 1963 the appellant, through *58 its Vice President, admitted by deposition that it still had in its possession, from the sale, certain desks, office equipment, hand trucks and the automobiles (rolling stock).
At the final hearing, on April 8, 1964, the appellant asserted for the first time that the vehicles (rolling stock) had all been sold in March or April of 1961, prior to the date of the sworn complaint.
I believe that there was substantial competent evidence to support a finding of commingling and the chancellor was correct in his ruling. For the reasons stated, I dissent.